# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:12-CV-144-MOC-DSC

| | |
|---|---|
| MOHAMMAD M. KARGARIAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **MEMORANDUM AND RECOMMENDATION** |
| AUTOZONERS, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's "Motion to Dismiss Amended Complaint" (Doc. 31) filed July 6, 2012, and the parties' associated briefs and exhibits. See Docs. 31-1, 31-2, 36, 37 and 37-1.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted in part and denied in part, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Accepting the factual allegations of the Amended Complaint as true, Plaintiff Mohammad M. Kargarian ("Plaintiff") is an Iranian male. Plaintiff was hired as a delivery driver by Defendant AutoZoners, LLC ("AutoZoners") on January 1, 2008. Beginning on or about June 2009, Plaintiff was subjected to ethnic slurs, jokes and offensive remarks by his co-workers. From June 2009 until

April 2009, he was assigned to AutoZone store #121[1]. On or about April 1, 2009, Plaintiff informed District Manager Chad Simpson that he was subjected to offensive remarks based on his national origin and requested transfer to another location. Plaintiff was transferred to store #2407. From the time of his transfer, Plaintiff alleges that

> "Store Manager, John White, and Department Manager, Patrick Lail, directed culturally offensive remarks, gave less preference to Plaintiff in employment related decisions, and harassed and subjected Plaintiff to a hostile and discriminatory work environment, including but not limited to:
>
> > a. On numerous occasions throughout Plaintiff's employment at store #2407, female co-worker and Team Leader, Olgas Alas, would regularly ridicule the Plaintiff with comments including, but not limited to, "I can't understand you with that stupid accent.";
> >
> > b. On or about May 1, 2010, Plaintiff was having a casual conversation with Store Manager John White during Plaintiff's scheduled work shift in which Plaintiff expressed an interest in learning to fly a helicopter. In response, Mr. White laughed and stated to the Plaintiff "You won't be allowed to take flying lessons because you're from Iran and might turn out to be a terrorist.";
> >
> > c. On numerous occassions throughout Plaintiff's employment, Team Leader Olga Alas would single out Plaintiff from other co-workers and subject Plaintiff to ridicule and unnecessarily demand that Plaintiff perform various job duties, causing regular disputes between Plaintiff and Ms. Alas. In every instance a dispute arose between Plaintiff and Ms. Alas, the Plaintiff would inform Commercial Department Manager Patrick Lail of Ms. Alas's behavior and Mr. Lail would send the Plaintiff home without pay regardless of the severity of Ms. Alas's conduct or wrongdoing.
> >
> > d. On numerous occasions throughout Plaintiff's employment, Store Manager John White, would give scheduling preferences to female co-worker and delivery driver Natalia Fernandez over the Plaintiff, despite Ms. Fernandez constantly arriving to work late and missing scheduled shifts.
> >
> > e. Throughout Plaintiff's employment, upon the occurrence of store #2407's commercial department being overstaffed, Store Manager John White or Department

---

[1] The Court readily observes an obvious problem with these dates. These dates are quoted directly from the Amended Complaint. Doc. 21. The Court brought this problem to the attention of all counsel. Since no Motion to Amend was filed by Plaintiff's counsel, the Court will construe the Amended Complaint as filed.

> Manager Patrick Lail would always require the Plaintiff to clock-out and go home for the shift prior to all other similarly situated delivery drivers at store #2407."

Doc. 21 at ¶ 13.

On July 9, 2010, Team Leader Olga Alas initiated a verbal altercation with Plaintiff by stating, "I can't understand you with that stupid accent." Id. at ¶ 20. Following the altercation, Store Manager John White demanded that Plaintiff turn in his driver key and go home. On or around July 9, 2010, Plaintiff was contacted by District Manager John Taylor and informed that he was being terminated for insubordination.

On July 26, 2010, Plaintiff filed a charge of discrimination ("Charge") with the EEOC and checked the boxes asserting claims of discrimination based on sex and national origin. Doc. 21-1. The Charge referenced events occurring between April 1, 2010 and July 9, 2010. It details the problems with Olga Alas and the comment by John White about Plaintiff being from Iran and a possible terrorist. Plaintiff did not check the "Continuing Action" box on the face of the Charge. There was no discussion in the Charge about any events prior to April 1, 2010. Plaintiff alleged in the Charge, "I believe that I have been discriminated against because of my national origin, Iran and my sex male, in violation of Title VII of the Civil Rights Act of 1964, as amended." Id.

On December 7, 2011, the EEOC issued Plaintiff a Notice of Right to Sue. On March 2, 2012, Plaintiff commenced this lawsuit against Defendant. On April 30, 2012, Defendant filed a Motion to Dismiss. Doc. 16. On June 1, 2012, Plaintiff filed an Amended Complaint. Doc. 21. On June 4, 2012, the Court issued an Order (Doc. 23) finding Defendant's Motion to Dismiss moot due to the filing of the amended pleading. In his Amended Complaint (Doc. 21), Plaintiff asserts the following causes of action against Defendant: (1) national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) gender discrimination in violation of Title

VII; (3) intentional infliction of emotional distress ("IIED") or in the alternative negligent infliction of emotional distress ("NIED"); (4) negligent retention and supervision; and (5) vicarious liability.

On July 6, 2012, Defendant filed this Motion to Dismiss Amended Complaint. Doc. 31. Defendant argues that Plaintiff's claims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). More specifically, Defendant argues that Plaintiff's claim for discrimination occurring prior to April 2010 fails because he did not exhaust his administrative remedies. Defendant asserts that these claims must be dismissed for lack of subject matter jurisdiction. Additionally, Defendant argues that the Title VII national origin and gender discrimination claims fail because Plaintiff does not allege facts to support them. Defendant also argues that Plaintiff's IIED or NIED claim fails because he does not allege sufficient facts to support either one. Defendant also argues that Plaintiff's negligent retention and supervision claim should be dismissed as a matter of law because Title VII claims cannot constitute the requisite underlying tortious act. Finally, Defendant argues that Plaintiff's vicarious liability claim fails because it is not a stand alone cause of action.

In "Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss" (Doc. 36), he argues that he did exhaust his administrative remedies with regard to the claims occurring prior to April 10, 2012 under the continuing violation doctrine. Additionally, Plaintiff argues that he has set forth sufficient facts in his Amended Complaint to support his all claims. Plaintiff acknowledges vicarious liability is not a stand-alone cause of action.

The Motion to Dismiss has been fully briefed and is now ripe for review.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1) Standard

A claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

4

The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff has the burden of proving that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

### B. Rule 12(b)(6) Standard

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they

5

are no more than conclusions, are not entitled to the assumption of truth. Id. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 554-55) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

Applying these principles in Iqbal to the plaintiff's allegation that the defendants had adopted a discriminatory policy permitting "restrictive conditions of confinement" for post-September 11 detainees, the Supreme Court held "the complaint does not show, or even intimate, that petitioners purposefully housed detainees in [restrictive conditions] due to their race, religion or national origin." Iqbal, 129 S. Ct. at 1952. Accordingly, dismissal was appropriate. Id.

## III. DISCUSSION OF CLAIMS

### A. Claims against Store #121

A plaintiff's failure to exhaust his administrative remedies in a Title VII claim deprives the federal courts of subject matter jurisdiction. Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir.2009). "Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir.2002). The EEOC charge must be filed within either 180 or 300 days after the unlawful employment practice occurs. 42 U.S.C. § 2000e–5(e)(1). North Carolina is a non-deferral state, and thus, a plaintiff's charge of discrimination must be field within 180 days of an alleged discriminatory act. Bratcher v. Pharmaceutical Product Dev., 545 F.Supp.2d 533, 543 (E.D.N.C. 2008). Plaintiff filed his Charge on July 26, 2010. Therefore, events that occurred prior to January 26, 2010 are untimely unless they are brought under a continuing violation theory.

In Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court held that in order for allegations outside the charge to be timely, the plaintiff must show that some part of the claims falling outside the filing period are part of the same actionable hostile working environment as those falling within the period. Id. at 120. Plaintiff argues that he was not required to file a charge within 180 days of the alleged acts at store #121, because under the continuing violation theory, those acts were sufficiently related to his timely EEOC charge alleging discriminatory acts occurring at store #2407.

The Court disagrees. Plaintiff's Complaint contains several problems with relevant dates that were brought to the attention of all parties in an email from the Court's law clerk on August 13, 2012. Plaintiff's counsel acknowledged in an August 14, 2012 e-mail that there were errors with the dates in the Amended Complaint. To date, no Motion to Amend the Amended Complaint has

been filed. The Court cannot construe the problems with dates in the Amended Complaint as scrivener's errors. The Court must read the Amended Complaint as filed.

In the Amended Complaint the Plaintiff asserts, "[b]eginning on or about June 2009, while under Defendant's employ, Plaintiff began being subjected to ethnic slurs, jokes and remarks by other co-workers." Doc. 21 at ¶ 7. The Amended Complaint continues that "[f]rom on or about June 2009 until April 2009, Plaintiff was employed by defendant as a delivery driver and assigned to Defendant's store #121 located in Charlotte, North Carolina." Id. at ¶ 8. The Amended Complaint continues "[t]hroughout Plaintiff's employment with Defendant's store #121, he was harassed and subjected to a hostile and discriminatory work environment. The store manager, Aaron Smith, directed offensive remarks based on the Plaintiff's national origin and gave preference to all other co-workers in terms of scheduling and work assignments." Id. at ¶ 9. The Amended Complaint then asserts, "[o]n or about April 1, 2009, the Plaintiff was granted a transfer to Defendant's store #2407 located in Charlotte, North Carolina." Id. at at ¶ 11.

Based on a plain reading of the Amended Complaint, the Court finds that the alleged discriminatory action did not take place until June 2009. Plaintiff transferred to store #2407 in April 2009. Plaintiff cannot argue, even under the continuing violation theory, that he made any claims of harassment regarding store #121. The Court finds that any claims regarding store #121 fail to state a claim upon which relief can be granted and it is not necessary to address whether they were timely filed. Consequently, the undersigned respectfully recommends that Defendant's Motion to Dismiss with respect to Plaintiff's claims regarding store #121 be granted.

**B. Title VII Hostile Work Environment Claim based on National Origin Discrimination**

Title VII prohibits "discriminat[ion] against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In a hostile work environment claim, a plaintiff must show that: 1) he experienced unwelcome harassment; 2) the harassment was based on a protected characteristic; 3) the harassment was sufficiently severe or pervasive to alter the conditions of employment; and, 4) there is some basis for imposing liability on the employer. Baqir v. Principi, 434 F.3d 733, 745–46 (4th Cir.2006) (citing Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003)).

Defendant asserts that Plaintiff's Amended Complaint cites only two specific instances of potentially discriminatory conduct, and that they amount to no more than simple teasing or rude remarks. The Court disagrees with Defendant's characterization.

At this stage of the litigation, the Court must view the allegations in the light most favorable to Plaintiff. Mylan Labs., Inc., 7 F.3d at 1134. Construing the Amended Complaint under this standard, the Court finds that the allegations demonstrate a potentially hostile work environment based on national origin discrimination. Plaintiff alleges that he was "subjected to ethnic slurs, jokes and remarks by other co-workers", "regularly ridicule[d]...with comments including, but not limited to, "I can't understand you with that stupid accent", and "you won't be allowed to take flying lessons because your from Iran and might turn out to be a terrorist", and "single[d] out...subject...to ridicule and unnecessarily demand[ed] that Plaintiff perform various job duties....[and] sen[t]... home without pay." Doc. 21 at ¶¶ 7 and 13. A reasonable trier of fact could fairly construe these comments as purposely insulting a person of Iranian origin. And because the conduct was allegedly frequent and repetitive, and directly related to the circumstances resulting in Plaintiff's termination, the Court could reasonably infer that harassment was "sufficiently severe or pervasive to alter the conditions of employment." Baqir, 434 F.3d at 746. "At the pleading stage, it would be

impermissibly exacting to demand that [Plaintiff] specifically enumerate the number of times that [Defendant] engaged in the alleged misconduct." Nieves v. CCC Transp., LLC, No. 3:12cv500-HEH, 2012 WL 3880590, at *5 (E.D. Va. September 6, 2012)(citing Twombly, 550 U.S. at 555 (citations omitted) ("[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations")).

Whether Plaintiff has proven national origin discrimination is not in issue at this stage of the proceedings. Rather the inquiry is whether he has plead facts that, if true, demonstrate a plausible claim for relief. Under this standard of review, the undersigned respectfully recommends that Defendant's Motion to Dismiss with respect to Plaintiff's hostile work environment claim based on national origin discrimination be denied.

### C. Title VII Disparate Treatment Claim Based on National Origin Discrimination

In order to prevail on a disparate treatment claim based on national origin, a plaintiff may proceed under either the "pretext" or "mixed-motive" framework. Worden v. SunTrust Banks, Inc., 549 F.3d 334, 341 (4th Cir. 2008). The mixed motive framework allows a plaintiff to establish through direct or circumstantial evidence that unlawful discrimination motivated the employer's adverse employment decision. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004). The pretext method of demonstrating disparate treatment requires a plaintiff to show that (1) he is member of a protected class; (2) he has satisfactory performance; (3) he was subjected to adverse employment action; and (4) similarly situated employees were treated more favorably. Id. at 285. In his Response, Plaintiff alleges that he should be allowed to proceed under a mixed motive framework.

The Fourth Circuit has emphasized that, "[r]egardless of the type of evidence offered by a plaintiff as support for h[is] discrimination claim (direct, circumstantial, or evidence of pretext), or

whether [ ]he proceeds under a mixed-motive or single-motive theory, '[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" Id. at 286 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000)). Further, the court stated,

> To demonstrate such an intent to discriminate on the part of the employer, an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that "the protected trait ... actually motivated the employer's decision." Reeves, 530 U.S. at 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (internal quotation marks omitted). The protected trait "must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." Id. (internal quotation marks and alterations omitted); cf. Price Waterhouse [v. Hopkins ], 490 U.S. [228,] 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (O'Connor, J., concurring) (noting that "statements by nondecision makers, or statements by decisionmakers unrelated to the decisional process itself [do not] suffice to satisfy the plaintiff's burden" of proving discrimination); Koski v. Standex Int'l Corp., 307 F.3d 672, 678 (7th Cir.2002) (noting that the pertinent inquiry is whether the decisionmaker, as opposed to other managers or subordinates, evaluated the aggrieved employee based upon discriminatory criteria).

Id. Thus, whether a plaintiff proceeds under the pretext or mixed motive framework, the plaintiff's ultimate burden is to demonstrate the employer's adverse employment action was motivated, at least in part, by discrimination.

The Court finds that Plaintiff has failed to meet this burden. In his Amended Complaint, Plaintiff alleges that District Manager John Taylor was not made fully aware of his complaints to District Manager Chad Simpson at the time Taylor assumed supervisory authority over store #2407. Doc. 21 at ¶ 19. Plaintiff also alleges that on or about July 9, 2010, Taylor contacted Plaintiff and informed him that he was being terminated for insubordination. Plaintiff makes no allegations that Taylor took Plaintiff's national origin into account when terminating him.

In the absence of any allegations that Plaintiff's national origin "played a role in the employer's decisionmaking process," the Court must look to the pretext framework. Plaintiff does

11

not allege that he was performing his job at a level that met his employer's expectations or that he was replaced by someone outside the protected class. Plaintiff concedes that he was terminated for insubordination, which would clearly evidence performance contrary to the legitimate expectations of his employer. In his EEOC charge, Plaintiff admits that he "cursed" supervisor Olga Alas. Doc. 21-1. In his Response, Plaintiff fails to refute Defendant's assertion that he was insubordinate and "cursed" his supervisor. Consequently, the Court finds that his Amended Complaint fails to state facts sufficient to show a prima facie case of disparate treatment based upon his national origin.

For the above reasons, the undersigned respectfully recommends that Defendant's Motion to Dismiss with respect to Plaintiff's disparate treatment claims based upon national origin be <u>granted</u>.

### D. Title VII Disparate Treatment Claim Based on Gender Discrimination

In his Response, Plaintiff asserts that his claim for gender discrimination is pursued solely under a disparate treatment framework. Under this framework, Plaintiff must allege the same prima facie case as discussed above with respect to gender discrimination. Plaintiff fails to allege that he was he was performing his job at a level that met his employer's expectations. Consequently, the Court finds that his Amended Complaint fails to state facts sufficient to show a prima facie case of disparate treatment based upon his gender and the undersigned respectfully recommends that Defendant's Motion to Dismiss with respect to Plaintiff's disparate treatment claims based upon gender be <u>granted</u>.

### E. Intentional Infliction of Emotional Distress Claim

To maintain an action for IIED under North Carolina law, a plaintiff must show: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress. <u>Dickens v. Puryear</u>, 276 S.E.2d 325, 335 (N.C. 1981). "Conduct is extreme and outrageous when

12

it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Guthrie v. Conroy, 567 S.E.2d 403, 408 (N.C. App. 2002) (quoting Briggs v. Rosenthal, 327 S.E.2d 308, 311 (N.C. App.), cert. denied, 332 S.E.2d 479 (N.C. 1985). This standard "excludes a great deal of conduct that is undoubtedly very bad and is properly considered reprehensible." Walker v. Sullair Corp., No. 90–2124, 1991 WL 195754, at *3 (4th Cir. Oct. 3, 1991). "North Carolina courts have been extremely reluctant to find actionable IIED claims in the employment context . . ." Efird v. Riley, 342 F.Supp.2d 413, 427 (M.D.N.C. 2004).

While a claim of IIED may be based upon acts of harassment, the behavior must be more than "mere insults, indignities, and threats." Hogan v. Forsyth Country Club Co., 340 S.E.2d 116, 123 (N.C. App. 1986) (finding no extreme or outrageous conduct where a supervisor screamed at employees, called them names, cursed at them, disrupted their work, threw menus at them, refused to grant pregnancy leave, and terminated an employee who left work due to labor pains). Furthermore, "plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind." Id. See also, Bratcher v. Pharmaceutical Product Dev., Inc., 545 F.Supp.2d 533, 545 (E.D.N.C. 2008) ("In cases where North Carolina courts have found IIED claims actionable, the conduct has been extremely egregious, and involved sexual advances, obscene language, and inappropriate touching."); Sheaffer v. County of Chatham, 337 F.Supp.2d 709, 733 n.14 (M.D.N.C. 2004) ("North Carolina courts have often found extreme and outrageous conduct only in cases involving sexual advances, obscene language and inappropriate touching."); E.E.O.C. v. Matthews, No. 2:92–cv–610, 1995 WL 529197, at *3 (M.D.N.C. June 26, 1995) (no extreme and outrageous conduct despite colleagues who directed multiple racial slurs at plaintiff). The determination of whether conduct

13

rises to the level of extreme and outrageous is a question of law. Guthrie, 567 S.E.2d at 408.

Plaintiff alleges that he was he was subjected to culturally offensive remarks, ethnic slurs, and jokes. He was told by a supervisor on several occasions "I can't understand you with that stupid accent." On one occasion, he was told by a supervisor that he could not take flying lessons because he might be a terrorist. Even taking Plaintiff's allegations as true, they do not rise to the level of being atrocious and utterly intolerable in a civilized community, and do not constitute extreme and outrageous conduct to support a claim for IIED. Therefore, the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted with respect to this claim.

### F. Negligent Infliction of Emotional Distress Claim

Plaintiff similarly fails to state a claim for NIED. Under North Carolina law a plaintiff must allege facts sufficient to show that "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . ., and (3) the conduct did in fact cause the plaintiff severe emotional distress." McAllister v. Khie Sem Ha, 496 S.E.2d 577, 583 (N.C. 1998). Other than merely stating, "or in the alternative Negligent Infliction of Emotional Distress" in parenthesis under the "THIRD CAUSE OF ACTION" in his Amended Complaint, Plaintiff completely fails to allege a claim for negligent infliction of emotional distress. Doc. 21 at 9. Plaintiff argues that when paragraphs 16, 17, 33, 39, 47, 48 and 49 in his Complaint are read together, he has sufficiently pleaded a claim for NIED. The Court disagrees. Paragraphs 47, 48 and 49 are not adopted in the NIED claim, and cannot be relied upon to support this claim for relief. The proffered allegations from the other paragraphs relate to intentional conduct or alleged acts and omissions on the part of employees and cannot support a claim for NIED. Consequently, Plaintiff's Complaint does not recite any elements of a NIED claim and fails to meet the pleading standard established in Iqbal. Accordingly, the undersigned

14

respectfully recommends that Defendant's Motion to Dismiss be granted with respect to this claim.

### G. Negligent Retention and Supervision Claim

The elements of this claim are: "(1) that an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act, the employer knew or had reason to know of the employee's incompetency." Smith v. First Union Nat'l Bank, 202 F.3d 234, 249-50 (4th Cir. 2000); Smith v. Privette, 495 S.E.2d 395, 398 (N.C. App. 1998). North Carolina law requires, as "[a]n essential element of a claim for negligent retention," that an employee "committed a tortious act resulting in plaintiffs' injuries." Waddle v. Sparks, 414 S.E.2d 22, 29-30 (N.C. 1992). Title VII discrimination, harassment, and/or retaliation cannot serve as the "underlying tort" to support a claim for negligent retention and supervision. McLean v. Patten Communities, Inc., 332 F.3d 714, 719 (4th Cir.2003) (holding that neither retaliation nor harassment are "common law torts," and therefore cannot constitute the prima facie element of a tortious acts for purposes of a negligent supervision claim).

Plaintiff's Complaint fails on the first element, since it does not allege that "an incompetent employee committed a tortious act resulting in injury to the plaintiff." Plaintiff cannot rely on allegations of Title VII discrimination, harassment, or retaliation as the "underlying tort" supporting a claim for negligent supervision. The undersigned finds that Plaintiff's state law tort claims for IIED and NIED fail to state claims upon which relief can be granted. Therefore, the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted with respect to this claim.

### H. Vicarious Liability Claim

"Vicarious liability is not a stand-alone cause of action. It is a derivative method of assigning liability to a party." Bond v. Rexel, Inc., No. 5:09cv122, 2011 WL 1578502, at *9 (W.D.N.C. April 26, 2011). Consequently, Plaintiff has failed to state a claim upon which relief can be granted and

the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted with respect to this claim.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendant's "Motion to Dismiss Amended Complaint," Doc. 31, be **GRANTED IN PART** and **DENIED IN PART**, that is, all Plaintiff's claims against Defendant be dismissed with prejudice EXCEPT Plaintiff's Title VII Hostile Work Environment Claim based on National Origin Discrimination with regard to actions that occurred at store #2407.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Max O. Cogburn, Jr.

**SO RECOMMENDED**.

Signed: September 13, 2012

David S. Cayer
United States Magistrate Judge